IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WORLD GOLD TRUST SERVICES, LLC, <br> a Delaware limited liability company, <br><br>      Plaintiff, <br><br> v. <br><br> GLOBAL X MANAGEMENT COMPANY LLC, <br> a Delaware limited liability company, <br><br>      Defendant. | Civil Action No. _____ |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff World Gold Trust Services, LLC, for its Complaint against Defendant Global X Management Company LLC, alleges as follows:

### I.  THE PARTIES

1.      Plaintiff World Gold Trust Services, LLC is a Delaware limited liability company having a principal place of business at 685 Third Avenue, Suite 2702, New York, New York 10017 ("WGTS").

2.      Defendant Global X Management Company LLC, is a Delaware limited liability company having a principal place of business at 623 5th Avenue, 15th Floor, New York, New York 10022 ("Global X") and may be served with this Complaint and Summons by hand service upon its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## II.   JURISDICTION AND VENUE

3.      This action arises under §§ 32 and 43(a) of the Trademark Act of July 5, 1946, as amended, commonly known as the Lanham Act, 15 U.S.C. § 1051, et seq., N.Y. Gen. Bus. Law § 360-L and the common law of the State of New York.

4.      The Court has subject matter jurisdiction over all asserted claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 (as the value of the sought injunction exceeds $75,000) and 1338, and 28 U.S.C. § 1367.

5.      The Court has personal jurisdiction over Global X as it transacts business in this judicial district, as Plaintiff's claims arise from its transactions of business in this judicial district, as Plaintiff's claims arise from Global X's commission of tortious acts in this judicial district, and as Plaintiff is being damaged in this judicial district.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as well as 28 U.S.C. § 1400(b).

## III.   GENERAL ALLEGATIONS

### A.      WGTS And Its Business

7.      WGTS is a limited liability company that was formed in 2002.  WGTS is a wholly owned subsidiary of the World Gold Council ("WGC").   WGC is the market development organization for the gold industry and helps investors to achieve their investment goals using gold.  WGTS developed and is the sponsor for the physical gold-backed exchange-traded fund ("ETF") SPDR®[1] Gold Trust or GLD®.  In that capacity, it oversees the operation of GLD.

8.      Shares of GLD represent fractional, undivided ownership interests in the GLD, the primary asset of which is gold bullion. Gold bars deposited in the GLD are held in an

---

[1] SPDR is a registered trademark of Standard & Poor's Financial Services LLC, and an ETF is an investment vehicle which typically has low cost, tax efficiency and stock-like features.

allocated account with a custodian, such as an account with a bullion dealer. The gold bars are owned by the account holder and the bullion dealer may not trade, lease or lend the bars. The trustee for GLD is BNY Mellon Asset Servicing and the custodian is HSBC Bank (USA).

9.      A share in GLD can be bought and sold throughout a trading day like stocks on a securities exchange through a standard brokerage account. GLD was first listed on the New York Stock Exchange in November of 2004, and has been traded on the New York Stock Exchange Arca ("NYSE Arca") since December 13, 2007. GLD is now the largest physically backed gold ETF in the world, with approximately $35 billion in assets under management and approximately one million investors.

10.      Information concerning GLD can be found at www.spdrgoldshares.com. Prominently displayed on the home page of that site is a logo located on the left hand side of the page and which shows the name SPDR GOLD SHARES GLD in which the letters "GLD" are emphasized by being presented in italicized font and being placed between two horizontal lines. *See* Exhibit 1 and it is incorporated herein by this reference.

11.      The SPDR GOLD SHARES GLD is, upon information and belief, most commonly referred to as GLD by investment professionals, investors, and the financial press. Evidence of such usage can be found in the financial press, on the internet and in other media, with a few examples of such usage attached hereto as Exhibit 2 and theses are incorporated herein by this reference.

**B.**      **Protectable Rights In The GLD ETF Symbol and Trademark**

12.      WGTS is the owner of incontestable U.S. Trademark Registration No. 3,247,900 for the trademark "GLD" covering "financial services in the nature of an investment security, namely, offers for undivided shares of trust assets, namely, gold bullion." The application for this registration was filed on February 27, 2003, claims a date of first use of November 18, 2004

and registered on May 29, 2007.  A photocopy of the registration certificate and printout from the U.S. Patent and Trademark Office's Trademark Status and Document Retrieval database pertaining to this registration are attached at Exhibit 3 and they are incorporated herein by this reference.

13.    A Section 8 and 15 Declaration of Use and Incontestability was filed in connection with U.S. Trademark Registration No. 3,247,900 on June 27, 2012 and accepted by the U.S. Patent and Trademark Office on June 30, 2012.  A copy of the Notice of Acceptance of the Section 8 Declaration of Use and Acknowledgment of the Section 15 Declaration of Incontestability is attached at Exhibit 4 and they are incorporated herein by this reference.

14.    As a consequence of the long and continuous use of the GLD trademark in commerce, WGTS has developed and owns valuable and enforceable trademark rights in the GLD trademark for use in connection with financial services.

15.    By virtue of the long and continuous promotion of WGTS' ETF and the high quality and success relating thereto, the GLD trademark under which these goods/services are offered has become favorably and well known to investors and other relevant professionals.

**C.      Defendant Global X's Infringing Conduct**

16.    Since being formed in 2008, Global X has provided financial services in the nature of global investment management of ETFs.  Since that time, Global X has created and offered to investors more than 40 separate ETF investment products.  Upon information and belief, prior to November 3, 2010, none of Global X's ETFs were offered in connection with a symbol containing the letters "GLD".

17.    On November 3, 2010, Global X introduced to the market its Global X Gold Explorers ETF.  (*See* Exhibit 5, which is incorporated herein by this reference.)  This ETF is traded on the NYSE Arca under the symbol "GLDX".

4

18.     Upon information and belief, Global X was and is engaging in various marketing efforts, including advertising and website activities, publicizing the Global X Gold Explorers ETF under the trademark GLDX.

19.     The GLDX symbol adopted by Global X as a trademark and to represent its Global X Gold Explorers ETF is virtually identical to the GLD trademark used by WGTS to identify its similar ETF.   Indeed, all Global X has done is add the letter "X" to the Gold Explorers symbol.

20.     Information concerning Global X's GLDX ETF can be found at www.globalxfunds.com.

21.     The symbol adopted by Global X to represent its Gold Explorers ETF is confusingly similar to WGTS's GLD trademark, resulting in damage to the value of the GLD trademark, WGTS' reputation, its customers, the trade in general and potential investors, generally.

22.     Global X's adoption of the GLDX symbol for its Gold Explorers ETF is particularly damaging to WGTS because both GLD and GLDX offer investors an ETF that is tied to the performance of gold and thus the financial products are highly related.

23.     Counsel for WGTS contacted Global X by letter dated November 18, 2010.   (A copy of this letter is attached at Exhibit 6 and incorporated herein by reference.)   In that letter, counsel for WGTS recited the rights of WGTS and requested Global X discontinue all use of GLDX.

24.     On November 29, 2010, counsel for Global X responded to WGTS' cease and desist letter by asserting that it did not believe Global X was using "GLDX" as a trademark.   (A copy of this letter is attached at Exhibit 7 and is incorporated herein by reference.)

25.     On December 3, 2010, counsel for WGTS sent a second letter to counsel for Global X explaining how ETF ticker symbols may also serve as trademarks and requesting that Global X discontinue all use of the GLDX symbol.  (A copy of this letter is attached at Exhibit 8 and is incorporated herein by reference.)

26.     Counsel for Global X responded on December 13, 2010 questioning WGTS' trademark rights and claiming that consumer confusion as to the source of the parties' ETFs was not likely in its opinion.  (A copy of this letter is attached at Exhibit 9 and is incorporated herein by reference.)

27.     On March 4, 2011, counsel for WGTS sent a further letter to counsel for Global X pointing out that Global X is using GLDX as a trademark on its website and in its advertising for its services, and setting out proposed terms for a settlement agreement.  (A copy of this letter is attached at Exhibit 10 and is incorporated herein by reference.)

28.     Counsel for Global X responded to the March 4, 2011 letter via email dated March 18, 2011 stating that while Global X is not willing to agree to all of the terms proposed in the March 18, 2011 letter, Global X was willing to work with WGTS to come to a settlement. Between March 18, 2011 and May 27, 2011, counsel for Global X and counsel for WGTS exchanged emails regarding the preparation of settlement agreement by counsel for Global X. (A copy of this email exchange is attached at Exhibit 11 and is incorporated herein by reference.) Counsel for Global X, however, never did provide counsel for WGTS with a proposed agreement.

29.     On December 31, 2011, counsel for WGTS sent a further letter to counsel for Global X forwarding a proposed letter of agreement to be executed by the parties.  (A copy of this letter is attached at Exhibit 12 and is incorporated herein by reference.)  Global X responded

by declining to further discuss the issues.  (A copy of the email is attached as Exhibit 13 and is incorporated herein by reference.)

30.     WGTS thereafter continued to monitor Global X's use of GLDX, and in 2014 retained new counsel to pursue the infringement matter.  WGTS' new counsel contacted Global X by letter dated May 21, 2014.  (A copy of this letter is attached at Exhibit 14 and incorporated herein by reference.)  In that letter, WGTS' new counsel acknowledged the prior correspondence between the parties, recited the rights of WGTS and requested Global X discontinue all use of GLDX.

31.     Counsel for Global X responded by letter dated July 24, 2014 reiterating its position that it does not believe WGTS has a valid claim of trademark infringement.  (A copy of this letter is attached at Exhibit 15 and incorporated herein by reference.)

## IV.  **FIRST CLAIM FOR RELIEF**
### (§43(a) of the Lanham Act)

32.     WGTS incorporates paragraphs 1 through 32 as though fully set forth herein.

33.     Global X has promoted and sold and continues to promote and sell in interstate commerce shares in an ETF under and/or in association with symbols which are confusingly similar to the GLD trademark.  Global X's actions have created a likelihood of investor and others' confusion as to the affiliation, connection or association of Global X with WGTS and as to the origin, sponsorship or approval of Global X's financial products with or by WGTS.

34.     Global X's unauthorized use of the GLD trademark, in connection with the marketing and sale of shares in its ETF is a willful violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35.     WGTS has been and continues to be harmed irreparably by Global X's actions and has no adequate remedy at law.

## V. SECOND CLAIM FOR RELIEF
(§32 of the Lanham Act)

36.     WGTS incorporates paragraphs 1 through 36 as though fully set forth herein.

37.     Global X's actions constitute infringement of WGTS' federal trademark registration for GLD and thus violate 15 U.S.C. § 1114.

38.     Global X continues to use the infringing mark GLDX with full knowledge of WGTS' superior rights, but without WGTS' authorization.  Global X's actions as described are likely to cause confusion with WGTS' established and superior trademark rights covered in its GLD trademark registration.

39.     Global X's acts constitute willful and deliberate infringement under 15 U.S.C. § 1114 and are in willful and wanton disregard of WGTS' established and superior rights.

40.     As a result of Global X's unlawful actions, WGTS has suffered commercial harm.

41.     WGTS has been, and continues to be, harmed irreparably by Global X's unlawful actions and WGTS has no adequate remedy at law.

## VI. THIRD CLAIM FOR RELIEF
(Common Law Trademark Infringement)

42.     WGTS incorporates paragraphs 1 through 42 as though fully set forth herein.

43.     Global X's actions as described above have caused and are likely to cause confusion with WGTS' established and superior rights in and to the GLD trademark and otherwise unfairly compete with WGTS.  Global X's actions have created a likelihood of consumer confusion as to the affiliation, connection or association with WGTS and/or as to the origin, sponsorship or approval of GLDX by WGTS.  As such, Global X's actions constitute trademark infringement under New York common law.

44.     Global X's unlawful actions were committed with willful and wanton disregard for WGTS' superior rights.

45.     WGTS has been and continues to be harmed irreparably by Global X's actions and has no adequate remedy at law.

## VII.  FOURTH CLAIM FOR RELIEF
### (§ 360-L of New York General Business Law)

46.     WGTS incorporates paragraphs 1 through 46 as though fully set forth herein.

47.     Global X's actions have caused a likelihood of injury to the business reputation of WGTS or dilution of the distinctive quality of the GLD trademark.  As such, Global X's actions constitute a violation of N.Y. Gen. Bus. Law § 360-L.

48.     WGTS has been and continues to be harmed irreparably by Global X's actions and has no adequate remedy at law.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE,** World Gold Trust Services LLC prays for judgment in its favor and against Global X as follows:

A.      That Global X, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns and parent and subsidiary corporations or other related entities, and any and all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)      any further infringement of WGTS' GLD trademark;

(2)      any further direct or indirect use of WGTS' GLD trademark or any mark that is confusingly similar thereto;

(3)      performing any action or using any mark, symbol or slogan that is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or the public into believing that WGTS and Global X are one and the same or in some way connected, or that WGTS is the sponsor of GLDX, or that Global X is in some manner affiliated or associated with,

or under the supervision or control of WGTS, or that Global X's financial products originate with WGTS or are connected or offered with the approval, consent, authorization, or under the supervision of WGTS; or

       (4)     any other conduct constituting unfair competition with WGTS.

    B.    That Global X be ordered to deliver up to WGTS for destruction, or certify destruction of, all materials that bear the GLDX symbol;

    C.    That Global X be ordered to file with the Court and serve on WGTS, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Global X has complied with any ordered injunction;

    D.    That WGTS be awarded costs and expenses of suit, including reasonable attorneys fees and expert witness fees; and

    E.    That such other and further relief be awarded as the Court deems appropriate.

Respectfully submitted,

Dated: May 23, 2016

Mario F. Gallucci
Michael DeSantis
Helbock, Nappa & Gallucci, LLP
2550 Victory Blvd., Ste 306
Staten Island, NY 10314
Tel: 718-273-9000
Fax: 718-816-0718
mario@hnglaw.com
mdesantis@hnglaw.com

Robert R. Brunelli (to be admitted pro hac vice)
    rbrunelli@sheridanross.com
Pamela N. Hirschman
New York State Bar No. 4289807
    phirschman@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado  80202
Phone:  303-863-9700
Facsimile: 303-863-0223
E-Mail:  litigation@sheridanross.com

**ATTORNEYS FOR PLAINTIFF**
**WORLD GOLD TRUST SERVICES, LLC**